## 39972. EALY v. THE STATE.

SMITH, Justice.

Vernon Leroy Ealy was tried before a Fulton County jury on two counts of aggravated assault and one count of murder. He was found guilty on all counts and sentenced to life imprisonment for murder and to two ten-year sentences for aggravated assault, these terms to be served concurrently with each other but consecutively to the life sentence. On appeal he enumerates as error ineffective assistance of counsel, certain comments by the trial court concerning production of alleged alibi witnesses, and the denial of his motions for continuance. We affirm.

Appellant was the common-law husband of the murder victim, Asa Daniels. On the night of November 25, 1981, appellant and Daniels were both at the Vegas Club, a bar on Candler Road in Atlanta. Felicia Jennings testified that she and a friend, Stephanie Montgomery, were also at the Vegas Club that evening. Daniels introduced herself to Jennings and Montgomery, and the three sat at the bar, talking, until approximately 3:00 a.m. on Thanksgiving morning, November 26, 1981. As the club's closing time approached, Ms. Daniels informed Jennings and Montgomery that she was alone and offered to drive them home. They accepted. When the trio arrived at Daniels' car, which was parked in the Vegas Club lot, appellant was already seated in the back seat on the passenger side. Daniels, Jennings and Montgomery joined appellant in the car, and the foursome left the Vegas Club, drove across Candler Road, and stopped at a service station to purchase gas. Jennings testified that while at the service station, appellant's face, which had previously been obscured by the dim lighting in the car's back seat, was clearly visible to her.

After exiting the gas station and while on Interstate 20, appellant directed Daniels to "get off right here." She exited the expressway at Sylvan Road, pulled off into an alley, and stopped. Appellant reached under the front seat and produced a revolver. He struck both Jennings and Montgomery in the head and threatened to

kill them if they did not relinquish their money. Daniels grabbed Montgomery's purse and began hitting her. Montgomery got out of the car and fled on foot. Daniels instructed Jennings to leave her purse in the car and run also. She complied. As the victims fled the robbery scene, appellant fired at and wounded them both. Jennings was shot twice in the arm; Montgomery, once in the abdomen. Both survived to positively identify appellant as their assailant and to testify against him at trial.

Following the robbery, appellant and Daniels drove to the Beatie Avenue home of Tanyia Johnson to pick up Freeman, Daniels' baby boy, whom they had previously left in the Johnsons' care. Tanyia informed the couple that the baby was not there and directed them to another address. While at the door, Tanyia observed appellant curse at Ms. Daniels, strike her in the mouth with force sufficient to knock her off the porch and into nearby bushes, and grab her by the collar and force her back into the car. Appellant and Daniels proceeded to 777 Dill Avenue, the address given them by Tanyia Johnson. Dennis George answered the door at approximately 3:30 or 4:00 a.m. He testified that appellant and Daniels picked up the child; that they returned about five minutes later to retrieve the child's coat, which they had forgotten; that after he gave them the coat and closed the door he heard a loud slap; and that when he reopened the front door he heard Daniels plead, "Vernon, don't hit me." Appellant had a gun in his hand.

Asa Daniels' body was discovered by a city garbage collector at approximately 8:00 a.m. on November 26. She had been shot in the head and left to die in a street very close to the location where Montgomery and Jennings had been robbed earlier that same morning. Atlanta Police Department Detective Lloyd, who investigated the murder scene, recovered two spent .38 caliber bullets there. A third .38 caliber bullet was recovered from Daniels' body. At trial a ballistics expert testified that in his opinion all three bullets had been fired from the same gun. Blood tests performed on one of the bullets recovered from the scene revealed traces of Type B blood. Montgomery, one of the assault victims, has Type B blood. Daniels did not. The murder weapon was never recovered.

Appellant was apprehended in New Jersey in September 1982 and extradited to Fulton County for trial. At trial appellant took the stand and denied knowing anything about the November 26 robbery and denied shooting Daniels. His primary defense was alibi. Appellant and two defense witnesses testified that he had been in Florida visiting his grandmother on Thanksgiving Day 1981, the day of the robberies and murder.

1. Although not raised by appellant, we have examined the

evidence under the standards of Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and find it to be sufficient beyond a reasonable doubt to support the conviction on all counts.

2. In his first enumeration appellant contends that he was ineffectively represented at trial by court-appointed counsel. In support of this contention appellant points out that his lawyer had only two weeks prior to trial to prepare a defense, failed to subpoena certain alibi witnesses, and failed to object to the charge of the court.

The right to counsel guaranteed by the Georgia and federal Constitutions means " 'not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.' " *Jackson v. State,* 249 Ga. 751, 756 (295 SE2d 53) (1982). Where inadequate representation is alleged, the reviewing court normally considers whether the defendant had a defense which was not presented; whether trial counsel consulted with the accused and adequately investigated the facts and the law; and whether the omissions charged to trial counsel resulted from inadequate preparation, rather than from unwise trial tactics. *Hawes v. State,* 240 Ga. 327, 329 (240 SE2d 833) (1977).

A review of the record indicates that, contrary to appellant's assertions, his court-appointed attorney provided him with adequate representation. While it is true that counsel for appellant was appointed only two weeks prior to trial, we are not prepared to say that two weeks' preparation time is inadequate as a matter of law. See Morris v. Slappey, —— U. S. —— (103 SC 1610, 75 LE2d 610) (1983) (6-day period found to be adequate); *Cannady v. State,* 190 Ga. 227 (9 SE2d 241) (1940) (24 hours sufficient). Under the facts of this case, two weeks was ample time for counsel to prepare appellant's defense of alibi. Prior to trial, counsel interviewed appellant at the Fulton County jail and reviewed the district attorney's case file. Moreover, it is clear from the record that at least part of the delay in procuring trial counsel was caused by appellant, who discharged two retained attorneys soon before his trial date. Trial counsel's preparation for trial was apparent during the trial itself, in which he raised numerous objections to testimony by state witnesses, conducted vigorous cross-examination of those witnesses, and called three alibi witnesses, including appellant, for the defense.

As to appellant's alleged out-of-state alibi witnesses, counsel was of course unable to subpoena them. He was, however, able to enter into a stipulation with the state concerning the favorable testimony of defendant's grandmother, a Florida resident. Appellant's alibi defense was fully and fairly presented to the jury, which rejected it. Any testimony by out-of-state alibi witnesses would have been cumulative of other testimony in the case. See *Farrell v.*

*State,* 160 Ga. App. 321, 322-23 (287 SE2d 318) (1981). Given the unclear and contradictory information concerning alleged witnesses' names and addresses supplied counsel by appellant, as well as appellant's assurances that he would secure their attendance at trial, trial counsel's inaction on this point is entirely understandable.

Appellant also claims that his attorney failed to subpoena one Reverend Bomar, a Georgia resident, who could testify as to his whereabouts on the date of the crime. During colloquy prior to trial the judge offered to subpoena Bomar for trial, but appellant declined for the reason that Bomar was out of state and unavailable at that time. Appellant further complains that counsel failed to object to the charge of the court. We have examined the charge and find it to be a complete and fair statement of the applicable law. Therefore there was no valid ground on which trial counsel could object.

Faced with positive eyewitness identifications of appellant and strong circumstantial evidence of his guilt, trial counsel ably presented his only viable defense of alibi. This enumeration is without merit.

3. Appellant contends that his three motions for continuance, two of which were made prior to trial and one during trial, were erroneously denied. We do not agree. The grant or denial of such a motion is within the sound discretion of the trial judge. *Cannady v. State,* supra. No abuse of that discretion appears here. "Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." Morris v. Slappey, 103 SC at 1616.

4. Finally, appellant contends that the trial court erred when he commented to appellant during an extended discussion on appellant's motion for continuance that if appellant desired out-of-state witnesses to appear on his behalf at trial, "you can have [the witnesses] here from New Jersey in four hours, so you can just plan to have them here tomorrow." Appellant contends that this direction was error, since, he submits, it is the responsibility of the court or of defense counsel to secure the appearance of defense witnesses. Appellant is mistaken. It is he, along with the court and counsel, who has an obligation to exercise diligence in securing the presence of absent witnesses. See *Burney v. State,* 244 Ga. 33, 40 (257 SE2d 543) (1979). Under the circumstances of this case, the trial court was authorized to find that appellant was not diligent in his attempts to secure the attendance of alleged alibi witnesses, and that his belated requests for a continuance for this purpose was nothing more than a "transparent ploy for delay," Morris v. Slappey, 103 SC

at 1617. In addition, as to out-of-state witnesses to whom the court's subpoena power is inapplicable, the decision whether to utilize the provisions of the Uniform Act to Secure the Attendance of Witnesses from Without the State, OCGA § 24-10-90 et seq. (Code Ann. § 38-2001a et seq.), is purely discretionary. In light of the other alibi testimony introduced at trial and appellant's assurances that the alleged witnesses were en route to trial, each of the trial court's rulings denying a continuance was correct. See *Farrell v. State,* supra; *Mafnas v. State,* 149 Ga. App. 286 (254 SE2d 409) (1979). This enumeration is without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 8, 1983.

*Frank G. Smith,* for appellant.
*Lewis R. Slaton, District Attorney, H. Allen Moye, Assistant District Attorney, Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* for appellee.